<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
BRAHEEM JOHNSON,                    :
                                    :   Civil Action No. 14-5207 (RMB)
         Petitioner,                :
                                    :
    v.                              :      **<u>OPINION</u>**
                                    :
UNITED STATES OF AMERICA,           :
                                    :
         Respondent.                :
_____:

**BUMB**, District Judge:

    This matter comes before the Court upon Petitioner's § 2241 petition ("Petition") which: (a) named the United States as Respondent; and (b) arrived unaccompanied by Petitioner's filing fee or <u>in</u> <u>forma</u> <u>pauperis</u> application.  <u>See</u> Docket Entries Nos. 1.

    The only proper respondent to a habeas petition challenging an inmate's current confinement is the warden of the facility where the inmate is being held.  Accordingly, the warden of FCI Fairton is the only proper Respondent in this action, while the United States should be dismissed, as Respondent in this matter, and such dismissal should be with prejudice.  <u>See</u> <u>Rumsfeld v. Padilla</u>, 542 U.S. 426(2004); <u>Yi v. Maugans</u>, 24 F.3d 500 (3d Cir. 1994).

    Moreover, a prisoner's legal obligation to prepay his filing fee or obtain <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") status is automatically incurred by the very act of initiating his suit.  <u>See</u> <u>Hairston v.</u>

Gronolsky, 2009 U.S. App. LEXIS 22770, at *5 (3d Cir. Oct. 15, 2009) (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)).[1]

Since Petitioner commenced this matter without submitting his filing fee (or his IFP application) and named the Respondent entitled to a prejudicial dismissal of Petitioner's claims, this action has, generally, become subject to termination. See Papotto v. Hartford Life & Accident Ins. Co., 731 F.3d 265 (3d Cir. 2013) ("administrative closings [are not final dismissals on the merits; rather, they] are a practical tool used by courts to prune overgrown dockets and are . . . useful in circumstances in which a case, though not dead, is likely to remain moribund").

Here, however, Petitioner maintains that his Petition is of extreme urgency, since this Court's enforcement of the directive issued by Petitioner's state judge would result in Petitioner's

---

[1] Therefore, "[t]he [C]lerk of each district court shall require the parties instituting any civil action . . . to pay a filing fee of $ 350 except that on application for a writ of habeas corpus the filing fee shall be $ 5." 42 U.S.C. § 1914(a). The Supreme Court, however, observed that, "while [$ 5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$ 500]." Smith v. Bennett, 365 U.S. 708, 712 (1961). Therefore, a related statute, § 1915, provides that leave to proceed IFP may be granted in any suit to a litigant "who submits an affidavit [which demonstrates] that the [litigant] is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). In a habeas matter, the prisoner seeking to proceed IFP must submit to the Clerk: (a) a completed affidavit of poverty; and (b) a certification signed by an authorized officer of the institution certifying both the amount presently on deposit in the petitioner's prison account as well as the greatest amount on deposit in the petitioner's prison account during the six month period prior to the date of the certification. See Local Civil Rule 81.2(b).

immediate release from confinement.  See Docket Entry No. 1, at 4.  Even though, as the analysis below demonstrates, Petitioner's procedural and substantive positions are unavailing, this Court will: (a) dispense with administrative termination of this matter; (b) direct the Clerk to terminate the United States as Respondent and add the warden of FCI Fairton; and (c) allow Petitioner fifteen days from the date of entry of the Order accompanying this Opinion to submit his filing fee or duly executed IFP application.[2]

   Petitioner asserts that

   [o]n January 6, 2007[, he] was arrested and charge[d
   with a firearm offense] by the [S]tate.[[3] He was

---

   [2]  While civil complaints are merely received and cannot be deemed "filed" until and unless the litigant prepay his filing fee or duly obtains IFP status, see 28 U.S.C. § 1915, and the court cannot reach the merits of the litigant's civil claims without first resolving the IFP issue, see Izquierdo v. State, 2013 U.S. App. LEXIS 15533, at *2-3 and n.1 (3d Cir. July 25, 2013), habeas applications are deemed "filed" upon receipt, see Brown v. Grondolsky, 2009 U.S. Dist. LEXIS 103111, at *2 (D.N.J. Nov. 5, 2009) (citing to the order stating, "The revised Habeas Rule 3(b) requires the Clerk to file a petition, even though it may otherwise fail to comply with Habeas Rule 2.  The Rule is not limited to those instances where the petition is defective only in form; the Clerk is also required to file the petition even though it lacks the required filing fee or an in forma pauperis form) (quoting 28 U.S.C. § 2254, Rule 3, Advisory Committee Notes, 2004 Am., brackets and ellipses omitted); accord Santana v. United States, 98 F. 3d 752 (3d Cir. 1996), therefore enabling the court to address the merits of the litigant's habeas claims, although the court may require the litigant's prepayment of filing fee or submission of a complete IFP application after its screening on the merits.  See Local Civil Rule 81.2(b)

   [3]  It appears that Petitioner refers to the Commonwealth of Pennsylvania as "the State," although this Court cannot rule out

>    released on bail on] Jan[uary] 8, [20]07.  On
>    Jan[urary] 14, [20]07[,] Petitioner was arrest[ed]
>    again by the [S]tate [this time, on the charge of]
>    robbery.  On Jan[uary] 24, [20]07, [that robbery] case
>    was dismissed. [On] Jan[uary] 30, [2007,] Petitioner
>    was arrested again [on the charge related to another]
>    robbery. [Petitioner did not make bail from that point
>    on.]  On Feb[ruary] 15, [20]07[,] Petitioner was
>    charge[d with] three other robberies that occurred on
>    [August 12, 2006, December 10, 2006 and January 6,
>    2007]. . . . [O]n May 21, 2007[,] a [federal] warrant
>    was [longed against him.  O]n June 12, 2007[, he was]
>    moved . . . from the Philadelphia County Jail [where he
>    was awaiting his state sentencing to another facility,
>    which accommodated Petitioner's federal proceedings.]
>    On December 21[,] 2007[,] Petitioner was [federally]
>    sentenced . . . to 18 months [of] imprisonment.  On
>    December 23, 2007, Petitioner was returned back to
>    Philadelphia County Jail.  On March 28, 2008,
>    Petitioner was sentence[d] by the [Commonwealth] of
>    Pennsylvania[] to 7-15 years.  The [Pennsylvania] judge
>    [expressed his wishes that Petitioner's state sentence
>    would] run concurrent[ly] with [his f]ederal sentence.
>    On February 21, 2014 [that is, six months prior to
>    commencement of the instant matter, Petitioner was
>    paroled from his state term into federal custody and
>    started serving his federal term].

Docket Entry No. 1, at 2.

Petitioner conceded awareness of the exhaustion requirement, see id. at 3, but alleged that exhaustion would be "futile" since "a substantial amount of time [would be] necessary to complete the administrative process," and "if [this] Court] grants his . . . [P]etition, [he would attain] immediate release."  Id. at 3-4. He also maintains that he "is not seeking a 'time credit,' but is

---

the possibility that Petitioner meant to refer to a different
territorial subdivision of the United States.

seeking a 'sentencing adjustment,'" and relies on Setser v. United States, 132 S. Ct. 1463 (2012). Id. at 5.

This position is deficient procedurally and substantively. A criminal complaint was filed against Petitioner in the Eastern District of Pennsylvania on May 21, 2007. See United States v. Johnson, Crim. Action No. 07-0384, Docket Entry No. 1 (PBT) (E.D. Pa.) (charging him with being a felon in possession of a firearm). He was indicted on that charge on July 10, 2007, see id., Docket Entry No. 10, and pled guilty on September 4, 2007. See id., Docket Entries No. 14 and 15. Honorable Petrese B. Tucker ("Judge Tucker") held his plea hearing on September 21, 2007, see id., Docket Entry No. 18, and issued the judgment of conviction on January 9, 2008. See id., Docket Entry No. 23. No statement in that judgment of conviction directed concurrence of Petitioner's federal term with his then-yet-to-be-imposed state term or expressed any preference for execution of Petitioner's federal term. See id.

This fact renders Petitioner's substantive position facially unavailing. "The authority to calculate a federal prisoner's release date for the sentence imposed, and to provide credit for pre-sentence detention and good conduct, is delegated to the Attorney General, who acts through the [Bureau of Prisons ('BOP')]." Armstrong v. Grondolsky, 341 F. App'x 828, 830 (3d Cir. 2009) (citing United States v. Wilson, 503 U.S. 329, 334-35

(1992)). "In calculating the sentence, the BOP determines[:] (1) when the federal sentence commenced, and (2) whether there are any credits to which the prisoner may be entitled." Nieves v. Scism, 2013 U.S. App. LEXIS 10989, at *3 (3d Cir. 2013) (citing 18 U.S.C. § 3585).[4]

---

[4] A sentence begins the date when a defendant "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); see also Howard v. Longley, 2013 U.S. App. LEXIS 17905, at *4 (3d Cir. Aug. 27, 2013) ("a sentence cannot start earlier than the day it was imposed . . . 'even if made concurrent with a sentence already being served'") (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). A federal sentence cannot begin to run when a defendant is placed in federal custody under an ad prosequendum writ, see generally, Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), since primary jurisdiction remains vested in the state because it is the sovereign that arrested the defendant first. Primary jurisdiction remains with the state until it relinquishes its priority, which the state can do only by one of four ways: (a) bail release; (b) dismissal of all charges; (c) parole release; or (d) expiration of sentence. See Rios v. Wiley, 201 F.3d 257, 274 (3d Cir. 2000), superseded on other grounds, as stated in, United States v. Saintville, 218 F.3d. 246, 248-49 (3d Cir. 2000); Davis v. Sniezek, 403 F. App'x 738, 740 (3d Cir. 2010) (same, relying on United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005)); see also Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa.) ("Primary jurisdiction over a state prisoner ends and federal custody over him commences only when the state authorities relinquish him on satisfaction or extinguishment of [his] state obligation[s]"), aff'd, 100 F.3d 946 (3d Cir. 1996); accord Carmona v. Williamson, 2006 U.S. Dist. LEXIS 77201 (M.D. Pa. Oct. 23, 2006) (since the state holds primary jurisdiction over the defendant, the federal officials assume only secondary jurisdiction over him while he is serving his state sentence). Once the state's primary jurisdiction is relinquished, federal jurisdiction transforms from secondary to primary. See Chambers, 920 F. Supp. at 622. At that point, the BOP calculates an inmate's projected release date by factoring in the specifics of his federal sentence and all appropriate credits. See Armstrong, 341 F. App'x at 830.

The key point of the BOP's calculation is the well-settled principle that a federal prisoner cannot receive a so-called "double credit," that is, a credit for the time already credited against his state sentence. See Wilson, 503 U.S. at 337 (in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time"). That said, a federal prisoner is entitled to a so-called "prior custody credit" for the time spent in detention before his federal sentence began if that this period has not already been credited against his other sentence. See 18 U.S.C. § 3585(b). In addition, the BOP may take an administrative action creating a "credit-like" effect. See, e.g., Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990). The Barden analysis is as follows:

> Under Section 3621(b), the BOP has discretion — i.e., the BOP may but not must — designate, [either prospectively] or nunc pro tunc, a state facility where a prisoner [is serving or] served his state sentence as a facility where the prisoner [is or] was serving his federal sentence. . . . The BOP may exercise such discretion only if the state court clearly indicated its intention to have the prisoner's state sentence run concurrently with the prisoner's already imposed federal sentence. Once the BOP determines such clear intent on behalf of the state court, the BOP: (1) is obligated to exercise its discretion by considering the prisoner's application in light of the factors stated in § 3621(b); but (2) is not obligated to grant the prisoner's request if, upon considering the prisoner's application in light of the factors stated in § 3621(b), the BOP concludes, in good faith, that such nunc pro tunc designation is not warranted.

7

Galloway v. Warden of F.C.I., 2009 U.S. Dist. LEXIS 9293, at *10-11 (D.N.J. Feb. 9, 2009), aff'd 385 F. App'x 59 (3d Cir. 2010) (where the BOP effectively frustrated the express wishes of the state judge who wrote, "It is difficult to comprehend [why the petitioner's] sentence, against [my] clear direction, should not run concurrent with [his f]ederal sentence," the BOP did not abuse its discretion in denying Barden designation, because the agency did not abdicate its responsibility to independently decide the issue.  A habeas review does not turn on what is "difficult to comprehend"; it is "limited to whether the BOP abused its discretion").  State judges' wishes as to application of state sentences to federal terms are *never* binding on the BOP. McKnight v. United States, __ F. Supp. 2nd __, 2014 U.S. Dist. LEXIS 86164, at *21-22 (D.N.J. June 25, 2014) (quoting Galarza-Villanueva v. Rios, 2012 U.S. Dist. LEXIS 47950, at *17 (E.D. Cal. Apr. 3, 2012), quoting, in turn, Del Guzzi v. United States, 980 F.2d 1269, 1272-73 (9th Cir. 1992)) (ellipses, brackets and parenthetical explanations omitted).

Hence, a federal prisoner has no right to any "adjustment of [his federal] sentence" on the basis of his state judge's wishes. See id. at *24 ("Had the state courts wished to ensure Petitioner's placement in federal custody . . . , they could have achieved that by releasing him on bail on the charges underlying his [state] conviction or by dismissing all his state charges . .

. .   The state courts did not do so.  Instead, they entered their judgments in a fashion triggering the scenario under which Petitioner's federal term would run consecutively to his state sentences.  Petitioner cannot convert his displeasure with the state judges' elections into a viable claim against the BOP").

That said, a prisoner's *federal* term can be reduced as a result of a "downward departure" granted by his *federal* court. With regard to such directive, the BOP has no authority but to execute it faithfully.  See Setser, 132 S. Ct. at 1470 ("3621(b) . . . does not confer [upon the BOP] authority to choose between concurrent and consecutive sentences").[5]

In contrast, if the sentencing federal court did not address the issue of concurrence expressly, the BOP is plainly *obligated* to presume an implied consecutiveness of the federal term.  See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at

---

[5] Hence, if the federal court directs a prisoner's federal term to run in prospective concurrence with his undischarged (either already running or yet-to-be imposed) state sentence, or if the federal court orders retroactive concurrence to an already-running state term, the BOP can neither second-guess nor alter that judgment.  See 18 U.S.C. § 3584(a) (federal courts' power to order prospective concurrence to an already-running state term); Setser, 132 S. Ct. at 1463 (federal courts' power to order prospective concurrence to a yet-to-be-imposed state term); Ruggiano, 307 F.3d at 121 (federal courts' power to order retroactive concurrence to an already-running state term).  Thus, with regard to the BOP's failures to comply with such *federal* directive, courts sitting in § 2241 habeas review, as this Court acts here, have the power to direct habeas relief: regardless of and without assessing the BOP's position, if any, on that issue.

different times run consecutively unless the court orders that the terms are to run concurrently").

Correspondingly, while Petitioner styled his Petition as an application for a "sentencing adjustment" (which, this Court surmises, implied a "downward departure" addressed in <u>Setser</u>), neither <u>Setser</u> nor any downward departure is applicable here. The judgment of conviction issued by Judge Tucker was silent as to downward departure, while the wishes of Petitioner's Pennsylvania judge could not give rise to a "sentence adjustment." In sum, the BOP: (a) was obligated to construe Judge Tucker's silence as a statement that Petitioner's federal term was imposed to run consecutively to Petitioner's Pennsylvania sentence; and (b) correctly did so.[6] <u>See</u> 18 U.S.C. § 3584(a).

Hence, the only relief Petitioner might conceivably seek is a "credit-like" administrative action that the BOP might take pursuant to the holding of <u>Barden v. Keohane</u>.[7] Here, this Court

---

[6] The fact that Petitioner was held in federal custody from June 12 to December 23, 2007, under an <u>ad</u> <u>prosequendum</u> writ could not affect the starting date of his federal sentence, <u>see</u> <u>Ruggiano</u>, 307 F.3d 121, since primary jurisdiction remained vested in the Commonwealth because it is the sovereign that arrested Petitioner on January 30, 2007, and he did not make bail on that arrest or later arrests by the Commonwealth.

[7] As detailed <u>supra</u>, under <u>Barden</u>, the BOP must exercise its discretion by considering Petitioner's application for such a "credit-like" action in light of the factors stated in § 3621(b) and is entitled to deny his application if the BOP concludes, in

is not in a position to conduct the abuse-of-discretion analysis applicable to <u>Barden</u>-based challenges. This is so because Petitioner concedes that the BOP was never presented with his request for a <u>Barden</u> credit. Circumventing his obligation to seek <u>Barden</u> credit and exhaust his application administratively, Petitioner now maintains that such exhaustion would be "futile" since "the process . . . would take . . . a minimum of 90 days . . . , and the process could take as long as 160 days." Docket Entry No. 1, at 3.

  Petitioner's arguments is halfhearted at best factually and, in addition, legally flawed. It is well established that a federal prisoner must exhaust available administrative remedies before seeking habeas corpus relief in federal court. <u>See Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 760-62 (3d Cir. 1996) (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a

---

good faith, that no <u>nunc pro tunc</u> designation is warranted. <u>See Galloway</u>, 2009 U.S. Dist. LEXIS 9293, at *10-11. Then, the federal court sitting in § 2241 habeas review could entertain Petitioner's challenge to such denial by examining whether the BOP abused its discretion. <u>See Galloway</u>, 385 F. App'x 59.

failure to exhaust in either context should be similar"); Young v. Quinlan, 960 F.2d 351, 356 (3d Cir. 1992).

True, the administrative exhaustion requirement may be excused if an attempt to obtain relief would be futile or the purposes of exhaustion would not be served. See Cerverizzo v. Yost, 380 F. App'x 115, 116 (3d Cir. 2010). However, the futility excuse applies when there is a showing that the agency's actions did and do clearly/unambiguously violate statutory or constitutional rights, and so the administrative procedures would be inadequate to prevent irreparable harm. See Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988); accord Strong v. Schultz, 599 F. Supp. 2d 556 (D.N.J. 2009) (where the BOP's written policy expressly stated that no relief would be granted to prisoners raising a certain type of claim, exhaustion was excused as futile); Colton v. Ashcroft, 299 F. Supp. 2d 681, 689-90 (E.D. Ky. 2004) (the futility exception applies in certain narrowly-defined circumstances, such as where there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider") (citing James v. United States Dept. of Health and Human Serv's, 824 F.2d 1132, 1139 (D.C. Cir.1987)).

In contrast, the mere fact that the administrative process is time-consuming and might take from three to five months does

not trigger the futility exception. Accord Shoup v. Shultz, 2009 U.S. Dist. LEXIS 46955, at *9 (D.N.J. June 2, 2009) ("where litigants had not attempted any exhaustion, the courts . . . systemically dismissed their petitions"); cf. Ramsey v. United States, 2006 U.S. Dist. LEXIS 32021 (M.D. Pa. May 22, 2006); Porte v. Warden, FCI-Allenwood, 2006 U.S. Dist. LEXIS 1710 (M.D. Pa. Jan. 9, 2006).

    Moreover, while Petitioner's exhaustion position could, arguendo, be construed as invoking the "exigent circumstances" exception, such construction cannot salvage the Petition. In addition, even if the "exigent circumstances" exception is legally permissible, such exception is unavailable to those who find themselves in the midst of a calamity of their own making. See Shoup, 2009 U.S. Dist. LEXIS 46955, at *15-16 ("[T]he calamity - if any - which Petitioner might be facing is of his own making, and such hypothetical self-inflicted distress cannot serve as a basis for excusing the exhaustion requirement") (citing Johnson v. Hogsten, 2009 U.S. Dist. LEXIS 32085, at *5 (E.D. Ky. Apr. 15, 2009), where an inmate "argue[d] that the Court should excuse him from completing the BOP's grievance process because he will be unable to do so before the date on which he would be entitled to [release]," but the court found "[t]his argument . . . without merit [because,] had he properly invoked the BOP's grievance process . . . , he would have had

ample time to complete the exhaustion process.  Therefore, any injury [the inmate] would suffer from his inability to complete the grievance process in time to obtain the full measure of relief he now seeks is self-inflicted").

Here, Petitioner concedes that he has been in federal custody since February 21, 2014, that is, for six months preceding his commencement of this matter.  Therefore, he was aware of his alleged injury for at least half a year.[8]  Thus, even the longest process of administrative exhaustion, lasting for five months or so, could have been easily completed in time for Petitioner's initiation of this suit.  Had the administrative process been completed, this Court would be availed to a record allowing it to conduct an informed analysis as to whether the BOP abused its discretion in addressing Petitioner's Barden request.  However, this Court has no record to rule upon.

Accordingly, the Petition will be denied without prejudice, as unexhausted, as to his Barden-based challenges.  In the event Petitioner exhausts his administrative remedies at to that line of challenges and is dissatisfied with the outcome, he may commence a new and separate § 2241 matter by filing a Barden-

---

[8] Since Petitioner had to be and was subject to federal detainer from the date federal charges were lodged against him, it appears that Petitioner was or had to be aware of his alleged injury since May 21, 2007, that is, for more than seven years.

14

based § 2241 petition free of unwarranted references to any "sentence adjustment."

Petitioner's <u>Setser</u>-based challenges will be dismissed with prejudice, as facially unsupported by the record.

Meanwhile, he will be directed to submit his filing fee or his duly executed, complete IFP application in the instant matter.

An appropriate Order follows.

s/Renée Marie Bumb<br>
**RENÉE MARIE BUMB**<br>
**United States District Judge**

Dated: September 5, 2014